468 So.2d 371 (1985)
Randy MILLER, As Executive Director of the Department of Revenue of the State of Florida, Appellant,
v.
Ervin HIGGS, Property Appraiser for Monroe County, Florida, and Ervin Higgs, Individually, Appellee.
No. AZ-182.
District Court of Appeal of Florida, First District.
April 23, 1985.
*373 Jim Smith, Atty. Gen., and Joseph C. Mellichamp, III, Asst. Atty. Gen., Tallahassee, for appellant.
*374 Beth E. Antrim-Berger, of Dent, Pflugner, Rosin and Hendricks, Sarasota, for appellee.
S. LaRue Williams, of Kinsey, Pyle, Williams and Tumbleson, Daytona Beach, for amicus curiae, Intern. Speedway Corp.
Roland H. Moore, Miami, and S. LaRue Williams, of Kinsey, Pyle, Williams and Tumbleson, Daytona Beach, for amicus curiae, Eastern Air Lines, Inc.
Woodrow "Mac" Melvin, Jr., and James R. George of Ruden, Barnett, McClosky, Schuster and Russell, Miami, and Ronald C. LaFace of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, for amicus curiae, Marine Exhibition Corp.
William M. Barr, of Raymond, Wilson, Conway, Barr, Burrows, and Jester, Daytona Beach, for amicus curiae, John W. Turner, Jr., Property Appraiser for Volusia County.
Beth E. Antrim-Berger, of Dent, Pflugner, Rosin and Hendricks, Sarasota, for amicus curiae, John W. Mikos, Property Appraiser for Sarasota County.
BARFIELD, Judge.
Randy Miller, as Executive Director of the Department of Revenue of the State of Florida, appeals a final summary judgment for appellee which is based upon a holding that chapter 80-368, sections 2-7, Laws of Florida, is unconstitutional. Ervin Higgs, property appraiser for Monroe County, cross-appeals the dismissal of count I of his complaint, which was ostensibly based upon a holding that he has no standing, as property appraiser, to challenge the statute in question. Various interested parties have been allowed to file amicus curiae briefs on both sides of the issues presented. We affirm the dismissal of count I of the complaint, but reverse the summary judgment for Higgs.
Chapter 80-368, Laws of Florida, amends certain statutes, including sections 196.199(2)(b), 196.199(7) and 199.023(1)(f), Florida Statutes, to provide that leasehold interests in government-owned property which are used for non-government purposes, and upon which rental payments are made, will be taxed as intangible personal property, with certain exceptions. If no rental payments are due, or if the property is originally leased for 100 years or more, or if the property is financed by bonds pursuant to chapter 159, Florida Statutes, the leasehold estate is taxed as real property.
Higgs filed a two-count complaint, in his capacity as property appraiser and as a taxpayer, seeking declaratory and injunctive relief. In his complaint, he contended that chapter 80-368 was an unconstitutional reclassification of leasehold interests in government-owned land as intangible personal property instead of real property, thereby diverting revenue from local government to state government, placing an unequal tax burden on owners of real property, and creating a favorite and exempt class of taxpayers.
The Department of Revenue moved to dismiss the complaint for lack of standing. Higgs moved for summary judgment, alleging that chapter 80-368, Laws of Florida, except sections 1 and 8, was facially unconstitutional and discriminatory in its application. The trial court dismissed Higgs as property appraiser for lack of standing, denied the motion to dismiss for lack of standing as a taxpayer, and apparently agreed that something was wrong with the statute, holding that the law "is contrary to the Constitution of the State of Florida as impermissible reclassification of property for ad valorem tax purposes."
The trial court was correct in its holding that Ervin Higgs, as property appraiser for Monroe County, Florida, lacked standing to bring suit to challenge the validity of a taxing statute or regulation. Department of Revenue v. Markham, 396 So.2d 1120 (Fla. 1981). State officers and agencies are required to presume that the legislation affecting their duties is valid, and they do not have standing to initiate litigation for the purpose of determining otherwise. Department of Education v. Lewis, 416 So.2d 455 (Fla. 1982); Barr v. Watts, 70 So.2d 347 (Fla. 1953).
*375 As to the trial court's implied holding that Higgs has standing as a taxpayer to challenge the statute, we note that the record contains not one scintilla of evidence to support the allegation that Higgs, as an individual, owns property in Monroe County, Florida (and is therefore presumably a taxpayer). This evidence is indispensable to a determination of his standing in the granting of a summary judgment.
As to the determination of the constitutionality of chapter 80-368, we find no merit in appellant's assertion that the trial court should have severed certain sections of the statute. However, an encyclopedic review of constitutional law and a quick look at the rules of civil procedure tell us that Higgs was not entitled to relief on his motion for summary judgment.
The motion does not meet the barest requirements of Rule 1.510(c) since it does not state with particularity the grounds upon which it is based, and should have been stricken. Higgs' memorandum of law in support of his motion is brief, unspecific, and unhelpful. Since no answer to the complaint has yet been filed, the only evidence in the record upon which the motion could have been determined consists of two affidavits: Higgs' affidavit saying that he is the property appraiser and performed the duties of property appraiser, and the affidavit of Randy Miller saying that he is the Executive Director of the Department of Revenue and performed certain duties as the executive director. The trial court's order (quoted above) does not explain the basis for its holding that the statute is unconstitutional. The attack on this legislation is vague and uncertain on the face of the pleadings, judgment and briefs before this court, especially when viewed in light of the broad legislative power and discretion in matters of taxation.
Subject only to constitutional restrictions and the will of the people expressed through elections, the legislature's power and discretion in regard to taxation are broad, plenary, unlimited and supreme. Fla.Jur.2d, Taxation, section 5:4. All questions as to mode, form, character, or extent of taxation, exemption or nonexemption, apportionment, means of assessment and collection, and all other incidents of the taxing power, are for the legislature to decide. Id. As long as the legislature does not violate constitutional restrictions, the courts have no concern with the wisdom or policy of the tax, the political or other motives behind it, or the amounts to be raised, since such matters are exclusively for the lawmaking body to decide. However, where the legislature transcends its power and violates a limitation placed on the taxing power by the constitution, the judiciary has the right and duty to declare the tax invalid. Id. at section 5:10.
In Eastern Airlines, Inc. v. Department of Revenue, 455 So.2d 311, 314 (Fla. 1984), the Supreme Court outlined the standard of review to be used in determining the constitutionality of tax legislation:
When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. In the field of taxation particularly, the legislature possesses great freedom in classification. The burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. The state must, of course, proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. A statute that discriminates in favor of a certain class is not arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy. (Cites omitted.)
The appellee has not carried his burden of demonstrating that the legislature clearly usurped its authority in enacting chapter 80-368 by showing that there exists no conceivable basis to support the classification, for tax purposes, of a leasehold interest in governmental property as intangible personal property.
*376 Taxation is the power by which a sovereign obtains revenue for its necessary expenses. It is a method of apportioning the costs of government among those who enjoy its benefits and must bear its burdens. From the viewpoint of the taxpayer, it is compensation for protection to his person or property. Fla.Jur.2d, Taxation, section 1:1. The particular category of taxes at issue here is the "ad valorem" (according to the value) tax, which can be further divided into real property taxes (from which government property is exempt), tangible personal property taxes, and taxes on intangible personal property (defined by section 199.023(1), Florida Statutes). Unless expressly exempted from taxation, all real and personal property and all leasehold interests in government-owned property are subject to taxation. Section 196.001, Florida Statutes.
Chapter 80-368 provides, with some exceptions, that leasehold interests in government property for which rental payments are due are to be taxed as intangible personal property. For the nineteen years before the enactment of the challenged statute, the legislature had provided through prior statutes that a leasehold interest in governmental property was taxable as real property. The practical differences between taxing leasehold interests as real property and taxing them as intangible personal property include differences in the taxing authority (real property taxes go to the local government, while intangible tax is collected by the state, but returned to the local school board); in valuations (real property is assessed by the county appraiser, based upon the value of the property itself, while intangible personal property is evaluated by the taxpayer on a "return", based upon the value of the leasehold interest, including such factors as the amount of annual rent paid, the number of years for which the property was originally leased, and the changing interest rates); and in millage (there is a two mill cap on intangible tax, while the combined millage cap on other ad valorem taxes for city, county, and school board purposes can be 30 mills).
At common law, a leasehold interest was considered a "chattel real" and was treated as personalty rather than realty. Williams v. Jones, 326 So.2d 425, 433 (Fla. 1975), appeal dismissed, 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63 (1976). In Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 574 (Fla. 1957), while finding that no provision had been made for taxation of leasehold interests, the court recognized that the legislature had the power to "set up machinery for that purpose". In 1961, the legislature responded to the court's observation in Sparkman by enacting section 192.62, Florida Statutes, which provides for the taxation of exempt and immune real or personal property used in connection with a profit making venture "to the same extent and in the same manner as other real or personal property," with certain exceptions. After the constitutional revision of 1968, this statute was reenacted verbatim as section 196.25, Florida Statutes (1969), and was the predecessor to sections 196.001(2) and 196.199, Florida Statutes (1971), enacted as part of chapter 71-133, Laws of Florida, commonly referred to as the "tax reform act". Williams v. Jones, 433 So.2d at 434. In Williams, the court found that the legislature had the power to treat leasehold interests in public land as real property for ad valorem tax purposes.
We hold that the legislature also has the power to reclassify some leasehold interests in public land as "intangible personal property" for ad valorem tax purposes, as it did in chapter 80-368. Dicta found in Williams does not bind future legislatures from reclassifying governmental leaseholds for purposes of taxation, so long as the classification is not arbitrary or unreasonable and so long as it does not conflict with any constitutional provisions.
Contrary to appellee's assertions, chapter 80-368 does not conflict with Article VII, section 3 of the Florida Constitution by providing an exemption from ad valorem taxation. Unlike the special acts invalidated by the Florida Supreme Court in Archer v. Marshall, 355 So.2d 781 (Fla. *377 1978) and Am Fi Investment Corporation v. Kinney, 360 So.2d 415 (Fla. 1978), chapter 80-368 does not exempt leasehold interests in government property from taxation, but instead imposes an ad valorem intangible personal property tax on them. No exemption is created by the fact that such interests are taxed at the lower intangible rate mandated by Article VII, section 2, of the Florida Constitution.
We find no merit in appellee's argument that the challenged statute creates a new classification of property in conflict with Article VII, section 4, of the Florida Constitution, as occurred in Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), on recertification, Interlachen Lakes Estates, Inc. v. Brooks, 341 So.2d 993 (Fla. 1976), where the property was classified according to the identity of the owner. "Intangible personal property" is the classification of the property. This classification predates the constitution and is specifically recognized and taxed under the constitution. The only application of Article VII, section 4 is its requirement of "just valuation". Chapter 80-368 provides for the assessment and taxation of leasehold interests at their full fair market value, so that it does not conflict with section 4.
The smorgasbord of constitutional challenges asserted under Article VII also includes the allegation that the statute violates the proscription of section 10(c). Section 10(c) prohibits the state or any of its agencies from using its taxing power to aid any entity and provides that if any project financed by revenue bonds is used by a private entity, the "property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." Chapter 80-368 provides for the taxation of leasehold interests in property financed, acquired or maintained through issuance of bonds pursuant to chapter 159, Florida Statutes, as real property, so that the challenged statute does not conflict with this provision of the constitution.
No constitutional review of a tax law would be complete without at least a passing glance at whether the affected parties have received equal protection under the law. Appellee and his amici contend that the classification created by chapter 80-368 is arbitrary and unrelated to any valid legislative purpose and that it is discriminatory because it results in a disproportionate tax liability upon real property owners. Appellant asserts that because of the differences between a leasehold interest and ownership of real property, a different tax treatment is not discriminatory, arbitrary, or unreasonable.
The question before us is not whether this law is wise, fair, or well drafted. It is within the legislative prerogative to classify property for the purpose of taxation, so long as the classification is based upon some reasonable distinction rationally related to the purpose for which the statute was enacted, and so long as it does not conflict with any provision of the state or federal constitution. Perfect equality in the operation of laws imposing a tax on real property is impossible. Gray v. Central Florida Lumber Company, 104 Fla. 446, 140 So. 320, rehearing denied, 104 Fla. 446, 141 So. 604 (Fla. 1932), cert. den., 287 U.S. 634, 53 S.Ct. 84, 77 L.Ed. 549 (1932). The legislature may use its taxing power to accomplish goals other than the immediate raising of revenue to cover government services. Some of these legitimate purposes include encouraging economic expansion, increasing the potential for employment of its citizens, encouraging development of its undeveloped land, and relieving the burden of those who, in reliance upon government promises of tax exempt status, chose an otherwise less advantageous method of obtaining possession of land, by leasing from a governmental entity.
Although some may doubt the wisdom of classifying a leasehold interest for which the lessee pays a nominal rent as intangible personal property, while a lessee who pays no rent is treated as the "owner" of the property for taxing purposes, we are *378 not prepared to say that the basis for this disparate treatment is not reasonably related to legitimate legislative purposes. Certainly appellee has not demonstrated to the court that this is so. We also note that a distinction is made between leaseholds of one hundred years or more and leaseholds of less than one hundred years, but this is also a distinction which we are not prepared to say is arbitrary or unreasonable.
We note that the record is virtually devoid of evidence to support the contentions of either party, and that there is in addition no demonstration of the effect of this law, which if explored might show some arbitrariness. A determination of the arbitrary or discriminatory effect of the law, however, would require a factual presentation which has not been made. Considering the status of the pleadings and the record before the trial court, we find its holding that chapter 80-368 is unconstitutional to have been premature. We reverse the summary judgment based upon that holding and remand for further proceedings consistent with this opinion.
SMITH and ZEHMER, JJ., concur.