**Clarence H. O'DONNELL and Georgia G. O'Donnell, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.**

**No. 83–5392**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

March 5, 1984.

---

Joel Gerber, Acting Chief Counsel, George M. Sellinger, IRS, Glenn L. Archer, Jr., Michael L. Paup, Chief-Appellate Section, Ann Belanger Durney, Philip I. Brennan, Dept. of Justice, Tax Div., Washington, D.C., for respondent.

Before HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

Petitioners, Clarence H. O'Donnell and Georgia G. O'Donnell (taxpayers), appeal from an order of the United States Tax Court granting the government's motion for partial summary judgment, and from the stipulated decision entered on February 11, 1983, determining deficiencies in taxpayers' income tax for 1976 and 1977, in the amounts of $4,500 and $6,500, respectively.[1] The sole issue presented in this appeal is whether the tax court erred in granting partial summary judgment.

### Background

In 1975, the taxpayers created a self-titled "Express Equity Pure Trust." The instrument provided:

THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by the CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED RENUMERATION ACCRUING THEREFROM, from any current source whatsoever, so that

| C. H. O'Donnell |
| --- |
| Grantor-Creator's name |

can maximize his life time effort through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, of which

| C. H. O'Donnell | feels he will |
| --- | --- |
| Grantor-Creator's name | |

achieve because they are sustained by his RELIGIOUS BELIEFS.

Taxpayers were appointed as trustees of the trust.

Taxpayers' 1976 and 1977 income tax returns included Mr. O'Donnell's salary from Eastern Airlines. These amounts, $50,-774.78 in 1976, and $54,481.56 in 1977, were deducted from gross income in both years as "adjustments in income" for "Payment of Nominee income to C.H. O'Donnell Equity Trust # 59–657897."

In both 1976 and 1977, Mrs. O'Donnell filed on behalf of the trust a Fiduciary Income Tax Return (Form 1041) reporting, among other income, amounts corresponding to the compensation received by Mr. O'Donnell from Eastern Airlines. A schedule of deductions attached to each return included charitable and political contributions and expenses for housing, utilities, travel, telephone, auto and insurance.

Following an audit of taxpayers' federal income tax returns for 1976 and 1977, on May 1, 1980, the Commissioner issued a deficiency notice to taxpayers disallowing the deductions for payments of Mr. O'Donnell's salary to the trust, on the ground that those payments did not qualify as deductions under the Internal Revenue Code.[2]

---

1. The decision provided that nothing contained in the stipulation would preclude an appeal by either party.

2. The Commission originally commenced a criminal investigation against taxpayers, but discontinued that investigation because taxpayers' reliance on the advice of a Certified Public Accountant would make culpability on taxpayers' part extremely difficult to prove. *See* Report of Discontinued Investigation at 3.

After adjustments and penalties, the total deficiency came to over $33,500. On July 18, 1980, taxpayers filed a petition for a redetermination of those deficiencies in the tax court.

On April 30, 1981, the government moved for partial summary judgment on the issue whether taxpayers are entitled, as a matter of law, to deduct the payments made to the Equity Pure Trust. At a hearing held on December 9, 1981, the government renewed its motion for partial summary judgment and the motion was granted from the bench. Taxpayers' motion for reconsideration was denied.

The tax court's partial summary judgment did not preclude taxpayers from personally claiming any legitimate deductions for itemized expenses claimed on the federal income tax returns of the trust. Accordingly, taxpayers produced some documents relating to their claimed deductions, and a settlement was reached between the parties. On February 11, 1983, pursuant to the parties' agreement, the tax court entered a decision determining deficiencies in income tax due from the taxpayers for the taxable years 1976 and 1977, in the amounts of $4,500 and $6,500, respectively. By its express terms, that decision did not preclude an appeal by either party of the case, and this appeal followed.

## Opinion

The parties are in dispute as to the issue presented in this appeal. The government contends that the issue is simply whether the taxpayers were entitled to deduct the above-mentioned payments to the trust from their gross income. Brief for Respondent at 11. Taxpayers claim that the issue is not the validity of the deductions, but whether the tax court denied them an opportunity to present evidence to show that their trust was not the usual "family trust"

by granting the government's motion for partial summary judgment. Brief for Petitioners at 9. A "family trust" is a tax protester's scheme for tax reduction and/or avoidance through multiple income splitting and extensive administration expenses. Typically, the trust reports all the personal income of the settlor and then deducts all personal living expenses to create a net loss, thereby enabling the trust and/or the settlor to pay little or no income tax. Such schemes have been universally condemned by the courts. *See, e.g., Schulz v. Commissioner*, 686 F.2d 490, 492–94 (7th Cir.1982).[3] In the usual "family trust," the income flows directly from the settlor's employer to the trust. Because in the instant case the income flowed from the employer to the taxpayer and then to the trust, taxpayer contends that the tax court should have given taxpayers an opportunity to present evidence to show that such an arrangement is different from the usual "family trust" and is therefore legitimate.

We find this argument incredible. The rationale underlying the courts' universal rejection of the "family trust" is the firmly established principle "that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle...." *See United States v. Basye*, 410 U.S. 441, 450, 93 S.Ct. 1080, 1086, 35 L.Ed.2d 412 (1973) (citing *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930)). Recognizing this principle, courts have repeatedly prevented taxpayers from avoiding payment of income tax through "family trusts" which receive taxpayer's income directly from the employer. *See Schulz, supra.* While taxpayer is correct in contending that his trust is not the usual "family trust," his trust is an even less sophisticated attempt to accomplish the same objective. By Mr. O'Donnell's own admission, he received income from his employer.[4] Therefore, unless O'Donnell had

---

3. The government's brief contains a rather comprehensive list of cases rejecting the "family trust" at p. 12 n. 3.

4. The following colloquy transpired between the court and the taxpayer at the partial summary judgment motion hearing:

THE COURT: [H]ow [does] your case differ[ ] from those numerous decisions of this and other courts which have ruled against you[?]

MR. O'DONNELL: Well, the fact that the Respondent [Commissioner] claims these are

legitimate deductions, he was required to pay tax on that income. Hence, the issue in this case is not the validity of the trust, but the validity of taxpayers' deductions for payments made to the trust. *See Vnuk v. Commissioner,* 621 F.2d 1318, 1320 (8th Cir. 1980).

Rule 121(d) of the Rules of Practice and Procedure of the United States Tax Court provides that when a motion for summary judgment is made and properly supported, the opposing party

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him.

The tax court found that the material facts were: (1) that O'Donnell received the money paid into the trust from Eastern Airlines, and (2) that the trust to which the money was given had "no charitable attributes or any other attributes that might give rise to a deduction." Record at 182–83. Taxpayers made no attempt to show their entitlement to a statutory deduction for the amounts placed in trust. Accordingly, we find no error in the tax court's granting of a partial summary judgment on the issue of the validity of the deductions.

The decision of the tax court is

AFFIRMED.[5]

---

nominee income; they are not nominee income.

THE COURT: Why not?

MR. O'DONNELL: Because it was income which I received and put into the trust directly.

THE COURT: You do agree that you received the money?

MR. O'DONNELL: Yes, sir.

Record at 134.

5. In an unsigned affidavit submitted to this court, taxpayers allege various instances of bias, prejudice, and untoward conduct by the tax court judge. For the taxpayers' benefit, we note that an appellate court's reviewing capacity is limited to the contents of the record. Given the frivolity of this appeal, our examination of the record reveals that the tax court judge was imminently patient with taxpayers' presentation.